IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FORD MOTOR COMPANY and § | | |
| LAND ROVER NORTH AMERICA, INC., § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | Civil Action No. **3-07-CV-2182-L** | |
| § | | |
| UNITED STATES AUTO CLUB, § | | |
| MOTORING DIVISION, INC., § | | |
| § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss, in Part, Plaintiffs' Complaint, filed February 25, 2008. After careful consideration of the motion, response, reply, briefs, record, and applicable law, the court **denies** Defendant's Motion to Dismiss, in Part, Plaintiffs' Complaint.

**I.     Factual and Procedural Background**

This case arises from a dispute involving the termination of a contract for the outsourcing of roadside assistance services between Ford Motor Company ("Ford") and Land Rover North America, Inc. ("Land Rover"), collectively, ("Plaintiffs") and United States Auto Club, Motoring Division, Inc. ("Auto Club").[1] Ford's Jaguar division and Land Rover offer roadside assistance to customers who purchase or lease vehicles. To access these services, Land Rover customers dial one of the following vanity numbers: 1-800-FIND4WD or 1-866-FORMYLR. Customers could also

---

[1]Auto Club was originally a subsidiary of Citigroup. After its purchase in September 2006, Auto Club became a subsidiary of Drive America Holdings ("Drive America").

**Memorandum Opinion and Order - Page 1**

contact 1-800-637-6837 or 1-800-444-3700 to access the services. Jaguar customers dial 1-800-4JAGUAR to access roadside assistance services.

Rather than providing the roadside assistance services themselves, Plaintiffs outsourced the provision of these services by contracting with third party vendors. On December 15, 2004, Plaintiffs each executed such a contract with Auto Club. Pursuant to these contracts, Plaintiffs' five toll-free numbers were transferred to Auto Club so that it could dispatch roadside assistance from its 24-hour call center. The contracts required Plaintiffs to pay a set-up fee for each eligible vehicle, but required Auto Club to refund a portion of the fees in certain instances, including termination of the contracts.

On September 5, 2007, Plaintiffs notified Auto Club of their intent to terminate the roadside assistance contracts effective December 5, 2007. They requested that Auto Club transfer the five toll-free numbers to Cross Country, the new roadside assistance vendor. Citigroup, Auto Club's former parent company, executed a transfer of service agreement with the telephone company, which authorized the transfer of the toll-free numbers to Cross Country. Four days later, it rescinded the authorization. Plaintiffs believe that Citigroup rescinded its authorization because Drive America, Auto Club's current parent company, contacted Citigroup and contended that Drive America was required to consent to any transfer the toll-free numbers. Although the toll-free numbers at issue in this case remain registered to Citigroup, the parties have agreed to "repoint" the numbers to Cross Country pending resolution of this litigation.[2]

---

[2]"'Repointing' is a form of call-forwarding, in which Jaguar and Land Rover customer calls are received by Drive America and then connected to both Drive America and Cross Country for the duration of the call." Pls.' Am. Compl. ¶ 32.

In their Amended and Supplemental Complaint, filed January 22, 2008, Plaintiffs allege that Auto Club breached the contracts by failing to refund certain prepaid fees and refusing to transfer the toll-free numbers. They also seek a declaratory judgment and injunctive relief regarding their rights under the contracts. On February 25, 2008, Auto Club filed Defendant's Motion to Dismiss, in Part, Plaintiffs' Complaint. It seeks dismissal of Plaintiffs claims founded upon its refusal to transfer the toll-free numbers ("Plaintiffs' toll-free claims"). Auto Club contends that the Federal Communications Commission ("FCC") prohibits the direct transfer of toll-free numbers between subscribers that Plaintiffs request. In the alternative, Auto Club seeks dismissal of Plaintiffs' toll-free claims under the doctrine of primary jurisdiction and argues that these claims should be adjudicated by the FCC rather than the district court because of the FCC's expertise in the subject matter.

## II. Analysis

Auto Club moves for dismissal of Plaintiffs' toll-free claims on two separate bases. First, it seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Auto Club seeks dismissal under the doctrine of primary jurisdiction. The court first addresses whether it is appropriate to dismiss Plaintiffs' toll-free claims under the doctrine of primary jurisdiction. The court determines that dismissal is not warranted.

### A. Primary Jurisdiction

Auto Club argues that dismissal of Plaintiffs' toll-free claims is appropriate "because of the FCC's ongoing interest in supervising the management of toll-free numbers." Def.'s Mot. to Dismiss 12. Plaintiffs argue that the application of the primary jurisdiction doctrine is unwarranted

because the FCC "is not well-equipped to address private contractual disputes and these disputes should be resolved by courts of appropriate jurisdiction." Pls.' Resp. 18.

The doctrine of primary jurisdiction operates, when applicable, to postpone judicial consideration of a case until an agency with special competence in the area makes a determination regarding a particular issue involved in the case. *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1092-93 (5th Cir. 1973). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pac. R.R.*, 352 US 59, 63-64 (1956); *see also Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988).

Not every case involving an issue with which an agency has expertise, however, is subject to postponement of judicial consideration under the doctrine of primary jurisdiction. *See Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419 (5th Cir. 1976), *cert. denied*, 429 U.S. 1094 (1977). A court need not postpone consideration of a case under the doctrine if "it can resolve the issues before it, using the plain language of the [regulations] and the ordinary rules of construction." *Id.* Although Plaintiffs' toll-free claims present a technical issue that is within the expertise of the FCC, such expertise is not required to resolve the issues presented in this case. The court determines that it can resolve these issues using the plain language of the regulations and the ordinary rules of construction. *See, e.g., Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347, 1353 (5th Cir. 1992); *cf. Distrigas of Massachusetts Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1118 (1st Cir. 1982) (referring case under doctrine of primary jurisdiction because "the

meaning of the disputed language . . . cannot be determined solely from the text itself, nor even by reference to the intent of the parties"). Therefore, the doctrine of primary jurisdiction does not apply to this case, and the court will proceed to resolve the issue of whether, when viewed in the light most favorable to Plaintiffs, the complaint states a valid claim with respect to Auto Club's failure to transfer the toll-free numbers at issue.

### B. Failure to State a Claim

Auto Club argues that Plaintiffs' allegations regarding their toll-free claims fail to state a claim upon which relief can be granted because federal law prohibits the direct transfer of toll-free numbers between unaffiliated subscribers. Plaintiffs counter that their complaint is sufficient to withstand dismissal under Rule 12(b)(6) and that federal law does not prohibit the relief they seek.

#### 1. Legal Standard

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1974 (2007). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area*

*Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a Auto Club attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### 2. Application

The court must determine whether the relief Plaintiffs seek is precluded by federal law. Auto Club contends that "[t]he FCC has concluded that its rules do not provide for toll-free numbers to be transferred directly from one subscriber to another and [has] ruled that direct transfers of numbers between subscribers contravene the lag time and hoarding rules and violate the first come, first served policy." Def.'s Mot. to Dismiss 9 (internal quotation marks omitted) (citing the letter from

Charles Keller, Chief, Network Services Division, FCC, to Michael Wade, President, Database Service Management, Inc., DA 00-2754, 15 F.C.C.R. 24053-54 (rel. Dec. 7, 2000) (the "Keller-Wade Letter");[3] *In re Toll-Free Service Access Codes*, 22 F.C.C.R 22188, 2007 WL 4481492 (F.C.C. Dec. 21, 2007); 47 C.F.R. 52.107(a)(1)-(2)). Plaintiffs argue that the FCC regulations cited by Auto Club are irrelevant to their claims because the regulations prohibit trafficking and hoarding toll-free numbers, which are not at issue in this case. Plaintiffs also argue that the Keller-Wade Letter is irrelevant because it "deals only with the assignment of bare telephone numbers" whereas Plaintiffs seek the "reassignment of the customer of record of an active account." Pls.' Resp. 12.

The FCC regulations provide that "[t]oll free subscribers shall not hoard toll free numbers" and that "[n]o person or entity shall acquire a toll free number for the purpose of selling the toll free number to another entity or to a person for a fee." 47 C.F.R. § 52.107(a). Hoarding is defined as the acquisition "of more toll free numbers than the toll free subscriber intends to use for the provision of toll free service. The definition of hoarding also includes number brokering, which is the selling of a toll free number by a private entity for a fee." *Id.*

The plain language of the regulation prohibits three things: (i) the acquisition of more toll-free numbers than the subscriber intends to use for providing toll-free service, (ii) the acquisition of a toll-free number for the purpose of selling it to another person or entity for a fee, and (iii) the selling of a toll-free number by a private entity for a fee. Because Auto Club does not contend that returning the use of the toll-free numbers to Plaintiffs for their ongoing business use falls into any of these three categories and the record does not support such a conclusion, the court determines

---

[3]The letter is written by the Common Carrier Bureau (now known as the Wireline Competition Bureau) (the "Bureau"), which is the subdivision of the FCC that deals with the regulation of toll-free numbers.

**Memorandum Opinion and Order - Page 7**

that, on these facts, the FCC regulations do not prohibit Auto Club from transferring the toll-free numbers back to Plaintiffs.

Auto Club quotes from portions of the Keller-Wade Letter and argues that "[t]he FCC has concluded that its rules do not provide for toll-free numbers to be transferred directly from one subscriber to another and [has] ruled that direct transfers of numbers between subscribers contravene the lag time and hoarding rules and violate the first come, first served policy." Def.'s Mot. to Dismiss 9 (internal quotation marks omitted). Auto Club's reliance on the Keller-Wade Letter is misplaced. Auto Club concedes that the Bureau has yet to clarify the interpretation of the FCC regulations contained in the letter. In the absence of such clarification, the court must rely on the plain language of the regulations. Moreover, the Keller-Wade Letter does not apply to this case. The first paragraph of the letter explains the context in which it was written and the harm that the FCC seeks to address. The letter begins as follows:

> The Commission's Common Carrier Bureau has increasingly received reports that toll-free numbers are being unlawfully transferred between subscribers. Similar reports have reached the Commission's Enforcement Bureau and Consumer Information Bureau. These reports typically indicate that numbers are placed in Disconnect Status and Suspend Status without the subscribers' knowledge and then transferred to other subscribers, in contravention of the Commission's toll-free number regulations. Accordingly, with this letter, the Bureau is directing DSMI to make changes to the Disconnect Status and Suspend Status functions in the SMS/800 database that will be consistent with existing regulations and that may help preclude such unlawful number transfers. These changes will make it substantially less likely that RespOrgs are able to use the SMS/800 to effectuate transfers that are contrary to our rules.

Keller-Wade Letter, 15 F.C.C.R. at 24053. The plain language of the letter reflects that its purpose is to prevent toll-free numbers from being placed in either a Disconnect Status or a Suspend Status *without the subscribers' knowledge* and subsequently transferred to other subscribers. The Bureau

describes this type of transfer as "in contravention of the Commission's toll-free number regulations." *Id.* This is not the type of transfer at issue in this case. Plaintiffs transferred the toll-free numbers to Auto Club to facilitate the provision of their roadside assistance programs.[4] Plaintiffs now request that Auto Club transfer the same toll-free numbers to the new vendor to facilitate the provision of Plaintiffs' roadside assistance programs. Auto Club has knowledge of the transfer and is required to sign a transfer of service agreement with AT&T to effectuate the transfer. Therefore, the transfer is not without the subscriber's knowledge. Accordingly, the court determines that the Keller-Wade Letter does not prohibit Auto Club from transferring the toll-free numbers back to Plaintiffs. Because federal law does not prohibit the transfer of toll-free numbers between subscribers on the facts of this case, Plaintiffs' allegations regarding their toll-free claims state a claim upon which relief can be granted.

## III. Conclusion

For the reasons stated herein, the court determines that federal law does not prohibit the transfer of toll-free numbers between subscribers on the facts of this case. Because federal law does not prohibit such transfers, Plaintiffs have pleaded sufficient facts to state a claim to relief that is

---

[4] To facilitate the provision of their roadside assistance services, Plaintiffs *transferred* the toll-free numbers at issue to Citigroup. When Drive America purchased Auto Club from Citigroup, Citigroup *transferred* to Drive America almost 80 toll-free numbers that were used by Auto Club to provide outsourced roadside assistance services. Therefore, Drive America received use of the toll-free numbers at issue by virtue of the same type of transfers that it now argues violate FCC regulations. It is ironic that the Keller-Wade Letter, upon which Auto Club extensively relies, could also be read to prohibit Citigroup's transfer of the toll-free numbers to Drive America as part of its acquisition of Auto Club. Auto Club recognizes the irony, but explains that "[a]lthough the agency has yet to issue any clarification, it also has not acted to invalidate any transfers of numbers associated with legitimate asset transfers." Def.'s Mot. to Dismiss 10. Auto Club fails, however, to provide the court with any instances where the Bureau has "acted to invalidate" any transfers like the one requested in this case. The court is not persuaded by Auto Club's "have your cake and eat it too" argument.

**Memorandum Opinion and Order - Page 9**

plausible on its face. Accordingly, the court **denies** Defendant's Motion to Dismiss, in Part, Plaintiffs' Complaint.

It is so ordered this 26th day of September, 2008.

Sam A. Lindsay
United States District Judge